IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| BOBO'S DRUGS, INC. d/b/a DAVIS ISLANDS PHARMACY, individually and as the representatives of a class of similarly-situated persons,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>AFS GENERAL CONTRACTING, LLC, CSG CONSOLIDATED SERVICE GROUP, INC., and JOHN DOES 1-10,<br><br>　　　　　　　　Defendants. | Case No.<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

Plaintiff, Bobo's Drugs, Inc. d/b/a Davis Islands Pharmacy ("Plaintiff") brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants, AFS General Contracting, LLC ("AFS") and CSG Consolidated Service Group, Inc. ("CSG") (together, "Defendants") and John Does 1-10:

## PRELIMINARY STATEMENT

1.　　Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2. Defendants sent Plaintiff at least 13 advertisements by facsimile and in violation of the TCPA. <u>Group Exhibit A</u>, <u>Group Exhibit B</u>, <u>Group Exhibit C,</u> and <u>Group Exhibit D</u>. The documents contained within <u>Group Exhibit A</u>, <u>Group Exhibit B</u>, <u>Group Exhibit C,</u> and <u>Group Exhibit D</u> advertise the quality or availability of Defendants' sealcoating, worksite preparation, power cleaning, asphalt repair, commercial painting, general construction, maintenance, or janitorial services. Plaintiff did not expressly consent to receive any advertisement from Defendants by fax. Moreover, Plaintiff does not have an established business relationship with Defendants.

3. Plaintiff brings this action against Defendants on behalf of a class of all persons or entities that Defendants sent one or more telephone facsimile messages ("faxes") about Defendants' sealcoating, worksite preparation, power cleaning, asphalt repair, commercial painting, general construction, maintenance, or janitorial services, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendants' violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4. Defendants' unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to

attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine while receiving an unsolicited fax transmission, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff, Bobo's Drugs, Inc. d/b/a Davis Islands Pharmacy, is an independent pharmacy located in Tampa, Florida.

6. On information and belief, AFS General Contracting, LLC is a Florida limited liability company with its principal place of business in Orlando, Florida.

7. On information and belief, CSG Consolidated Service Group, Inc. is a Florida corporation with its principal place of business in Orlando, Florida.

8. John Doe Defendants 1-10 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, benefitted from those transmissions, or are successors in interest to Defendants. When Plaintiff discovers their identities, it will seek leave to amend this complaint to add allegations regarding such person's activities and liabilities in this action.

9. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10. Personal jurisdiction exists over Defendants in Florida because Defendants are Florida limited liability entities, have transacted business within the State and have committed tortious acts within the State.

11. Venue is proper in the Middle District of Florida because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

12. AFS General Contracting is a general contractor that provides construction, renovation, remodeling, water proofing, painting, paving, and sealcoating services.

13. GSG Consolidated Service Group provides maintenance, sweeping, porter, debris removal, janitorial, pressure washing, sealcoating, line striping, asphalt repair, and painting services to commercial businesses, office parks, theme parks, hotels, apartment/condo complexes, and homeowners' associations.

14. On information and belief, AFS and CSG share the same telephone number, address, and officers.

15. Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

16. Plaintiff has received at least 13 of Defendants' advertisements by facsimile. True and correct copies of the faxes Plaintiff received on November 18, 2013, on January 14, 2014, and on July 9, 2014 are attached as Group Exhibit A. True and correct copies of the faxes Plaintiff received on October 21, 2014, on December 10, 2014, and on February 10, 2015 are attached as Group Exhibit B.

True and correct copies of the faxes Plaintiff received on June 10, 2015, on April 6, 2016, on June 7, 2016, and on October 19, 2016 are attached as Group Exhibit C. True and correct copies of the faxes Plaintiff received on February 10, 2014, on April 2, 2014, and on August 6, 2014 are attached as Group Exhibit D.

17. The documents in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D are each a one-page document Defendants sent by fax. The faxes advertise the commercial availability or quality of property, goods, or services. The faxes provide information about the availability and quality of Defendants' general contracting, sealcoating, janitorial, and/or facilities management services available by calling 1-866-793-3735. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

18. The document dated November 10, 2013 promotes Defendants' maintenance, general contracting, sweeping, porter, bulk debris removal, janitorial, pressure washing, hydro-cleaning, asphalt repair, commercial painting, parking lot maintenance, sealcoating, and/or line striping services. The document dated November 10, 2013 states that AFS is "Not Your Average Facility Service Provider." Group Exhibit A, p.1.

19. The documents dated January 14, 2014 and July 9, 2014 promote Defendants' "Advanced Sealcoating & Line Striping" services. Group Exhibit A, pp.2-3. The documents dated January 14, 2014 and July 9, 2014 promote the quality of Defendants' sealcoating services by stating that Defendants' process "consists of 6 steps." Group Exhibit A, pp.2-3.

20. The documents contained in Group Exhibit B promote Defendants' sealcoating and line striping services. Group Exhibit B. Each of these three documents promotes the availability and quality of Defendants' sealcoating services by stating that AFS is "The Smart Choice for Sealcoating & Line Striping" and that "Nothing makes your business stand out more than a newly sealcoated and striped parking lot." Group Exhibit B. The documents contained in Group Exhibit B offer "free estimates" by calling 1-866-793-3735. Group Exhibit B.

21. The documents contained in Group Exhibit C promote Defendants' sealcoating and line striping services. Group Exhibit C. Each of these three documents promotes the quality of Defendants' sealcoating services by stating that CSG is "The Smart Choice for Sealcoating & Line Striping" and that "Nothing makes your business stand out more than a newly sealcoated and striped parking lot." Group Exhibit C. The documents contained in Group Exhibit C offer "free estimates" by calling 1-866-793-3735. Group Exhibit C.

22. The documents contained in Group Exhibit D promotes Defendants' commercial building maintenance services, as well as Defendants' other services. The document dated February 10, 2014 promotes the quality of Defendants' building maintenance services by stating "having a facilities maintenance company to manage all of your commercial building maintenance is key to making your life easier!" Group Exhibit D, p.1. The document dated February 10, 2014 implies that Defendants' services will result in sustained customer satisfaction, increased safety, and retaining property value. Group Exhibit D, p.1.

23. The document dated April 2, 2014 promotes the quality and availability of Defendants' building maintenance services by stating that AFS provides "unparalleled attention to detail since 1995" and that AFS can satisfy "even the most demanding clients." Group Exhibit D, p.2.

24. The document dated August 6, 2014 promotes the quality of Defendants' building maintenance services by stating that AFS provides "Complete Care For Your Facility" and that AFS can satisfy "even the most demanding clients." Group Exhibit D, p.3.

25. Each of the documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D contain Defendants' telephone number 1-866-793-3735 in large, bold font which recipients could use to order Defendants' facilities maintenance, contracting, sealcoating, or other services. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

26. Each of the documents contained in Group Exhibit A, Group Exhibit B, and Group Exhibit D prominently displays the AFS logo at the top. Group Exhibit A, Group Exhibit B, and Group Exhibit D.

27. Each of the documents contained in Group Exhibit C prominently displays the CSG logo in the top right corner. Group Exhibit C.

28. None of the documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D includes the opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

29. On information and belief, Defendants sent advertisements by

facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

30. Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about clients' needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person or entity that was sent one or more telephone facsimile messages after October 30, 2013 offering sealcoating, building maintenance, facilities management, janitorial, or general contracting services by calling 1-866-793-3735 that did not inform the fax recipient that he or she may make a request to the sender of the advertisement not to send any future facsimile advertisements and that failure to comply with the request within 30 days in unlawful.

Plaintiff anticipates modifying the proposed class definition, including proposing subclasses where appropriate, after discovery about the scope and breadth of Defendants' fax advertising program and will do so through an amended motion for class certification pursuant to Fed. R. Civ. P. 23.

32. Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

33. In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendants sent by fax. Exhibit E, a Demand for Preservation of All Tangible Documents Including Electronically Stored

Information.

34. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

35. **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

36. **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a. Whether any of the documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, Group Exhibit D, and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of any property,

      goods or services;

b. Whether Defendants were the senders of advertisements by facsimile promoting the commercial availability or quality of any property, goods, or services;

c. The manner and method used to compile or obtain the list(s) of fax numbers to which Defendants sent fax advertisements;

d. Whether the Court should award statutory damages to Plaintiff and the other class members;

e. If the Court finds that Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f. Whether the Court should enjoin Defendants from faxing advertisements in the future; and

g. Whether Defendants' conduct as alleged herein constituted conversion.

37. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other

putative class members will prevail as well.

38. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

39. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise by fax again in the future.

40. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly

burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

COUNT I
TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

41.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

42.    Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

43.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

44.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."  47 U.S.C. § 227 (a) (4).

45.    The documents in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D advertise Defendants' commercially available construction, renovation, remodeling, water proofing, painting, paving, sealcoating, maintenance, sweeping, porter, debris removal, janitorial, pressure washing, line striping, and/or asphalt repair services.

46. Defendants sent the documents in <u>Group Exhibit A</u>, <u>Group Exhibit B</u>, <u>Group Exhibit C</u>, and <u>Group Exhibit D</u> to Plaintiff and the fax machines of other professionals to promote Defendants' construction, maintenance, and facilities management services.

47. The TCPA provides a private right of action as follows:

> 3. <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) Both such actions.

47 U.S.C. § 227 (b) (3).

48. The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

49. The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

50. Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as those in <u>Group Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

51. Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an

advertisement by facsimile (such as those in Group Exhibit A) to Plaintiff and the other class members without their prior express invitation or permission.

52. Here, Defendants violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

53. Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

54. The documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D do not state that Defendants' failure to comply with an opt-out request within 30 days is unlawful. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

55. The documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D do not inform the recipient that he/she/it has a legal right to request that Defendants not send any future fax. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

56. The documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D do not inform the recipient that an opt-out request will be valid only unless and until the person making the request subsequently provides express invitation or permission to the sender, in writing or otherwise, to

send such advertisement to such person at such telephone facsimile machine. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

57. The documents contained in Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D do not contain a toll free telephone number that the recipient may call to request that Defendants not send any future fax. Group Exhibit A, Group Exhibit B, Group Exhibit C, and Group Exhibit D.

58. The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if Defendants' actions were negligent. 47 U.S.C. § 227 (b) (3).

59. Even if Defendants did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

60. If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

61. Defendant AFS is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, approved the format and content of the faxes, the faxes were sent on its behalf, the faxes advertise Defendant's good, products, or services, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

62.     Defendant CGS is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, approved the format and content of the faxes, the faxes were sent on its behalf, the faxes advertise Defendant's good, products, or services, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

63.     Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. The subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review Defendants' unlawful fax. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation

16

of the TCPA;

C.   That, if it finds Defendants willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.   That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.   That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

64.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

65.   Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendants.

66.   By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

67.   Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to

possession of their fax machines, paper, toner, and employee time.

68. By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

69. Defendants knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

70. Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

71. Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award damages;

C. That the Court award punitive damages;

D. That the Court award attorney's fees;

E. That the Court award costs of suit; and

F. That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

BOBO'S DRUGS, INC. d/b/a DAVIS ISLANDS PHARMACY, individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock (FL 93985)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Ste. 1000
Chicago, IL 60602
P.O. Box 416474
Miami Beach, FL 33141
Telephone: 312-658-5500
Facsimile: 312-658-5555
service@classlawyers.com